IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00799-WDM-CBS

TIMBER DOODLE GLADE EQUITY VENTURE, LLC,
HILL WILLIAMS & HICKS, LLC, and
DON JOHNSON,

      Plaintiffs,

v.

D.E. SHAW LAMINAR LENDING, INC.

      Defendant.

---

## ORDER ON MOTION TO DISMISS

---

Miller, J.

      This matter is before the court on the Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief May be Granted, And in the Alternative, Motion to Transfer Any Remaining Claims to Bankruptcy Court Pursuant to Local Rule 84.1 (doc no 41) ("Motion to Dismiss") filed by Defendant D.E. Shaw Laminar Lending, Inc. ("Lender"). Plaintiffs oppose the motion. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is granted in part.

<u>Background</u>

      Subject matter jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. This case has its origins in the bankruptcy proceedings of Plaintiffs Timber Doodle

Glade Equity Venture, LLC and Hill, Williams & Hicks, LLC (collectively, the "Debtors"), each of which was the record owner of two properties in Aspen, Colorado (the "Properties"). First Amended Complaint and Jury Demand ("Complaint") ¶¶ 13, 14. The Properties were used as a residence by Plaintiff Don Johnson ("Johnson"). *Id.* In an effort to avert foreclosure on the Properties, the Debtors filed a chapter 11 petition for bankruptcy reorganization (Case No. 04-17597-MER and Case No. 04- 17602-MER)[1]. The Debtors filed a First Amended Joint Chapter 11 Plan of Reorganization of Timber Doodle Glade Equity Venture, LLC and Hill, Williams & Hicks, LLC (the "Plan") and Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of Timber Doodle Glade Equity Venture, LLC and Hill, Williams & Hicks, LLC (the "Disclosure Statement"). Motion to Dismiss, Exhibits A and B. The Plan provided that Debtors would obtain a loan from Lender, personally guaranteed by Johnson, to pay off creditors and emerge from bankruptcy proceedings (the "Exit Financing Facility"). Plan at 2. The terms of the loan would be set forth in loan documents to be filed with the Bankruptcy Court. *Id.* at 9. Under the Plan, the Lender would be granted a first priority lien and security interest in the Properties. *Id.* If the loan was not paid at maturity, the property securing the loan would be sold at auction in accordance with a supplemental agreement between Debtors and Sheldon Good and Company Auctions, LLC. *Id.* at 10. The Bankruptcy Court conducted a confirmation hearing in regard to the Plan and thereafter entered an order approving the Plan and Disclosure Statement ("Confirmation Order"). Motion to Dismiss,

---

[1]Although Plaintiffs' Complaint and Amended Complaint do not refer to the bankruptcies, on a motion to dismiss I may take notice of public records without converting the motion to one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

Exhibit C.

In the Confirmation Order, dated August 12, 2004, the Bankruptcy Court made a number of specific findings of fact and conclusions of law.   Based on Debtors' representations in the Plan, the Bankruptcy Court specifically found that "[t]he proceeds of the Exit Financing Facility will be used for a business or commercial purpose and not for a personal family or household purpose." Confirmation Order at 5.  In addition, the Bankruptcy Court found that the Plan was proposed in good faith, that the terms of the loan was negotiated at arms' length and in good faith between Debtors and Lender, that Lender has acted in good faith in negotiating the financing, and that Lender had taken no wrongful or improper action in regard to the Plan, the financing arrangement or the loan documents. *Id.* at 6. In addition, the Bankruptcy Court made the following finding: "The Exit Financing Facility, the Loan Documents and each document, instrument, and agreement executed in connection therewith shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms." *Id.* at 9. Thereafter, the loan documents and auction agreement were signed and the loan proceeds distributed.

After the bankruptcy estates closed, around September 2005, the auction company, Sheldon Good, filed a complaint against Debtors alleging breach of the auction agreement.  Amended Complaint ¶ 31.  A few months later, Sheldon Good filed a lis pendens on the Properties.  *Id.* ¶ 32.  The lawsuit was eventually settled.  *Id.* ¶ 33. Lender considered the breach of the auction agreement to be a breach of the loan agreement, demanded full payment, and began accruing default interest.  *Id.* ¶ 34.  The day after the loan maturity date, Lender sent Debtors a letter stating that Debtors had failed to pay amounts owed and

demanding full payment within the ten day grace period. *Id.* ¶ 35. Thereafter, Lender began foreclosure proceedings. *Id.* ¶ 36. Debtors filed a notice of intent to cure, but Lender sent a letter to the public trustee indicating that the amount due under the loan included default interest in excess of $500,000. *Id.* ¶¶ 37-38. Debtors paid these amounts under protest and thereafter sold the Properties to a third party. *Id.* ¶ 39.

Plaintiffs then initiated this action. At this time, the governing pleading is the First Amended Complaint and Jury Demand, which asserts the following causes of action: (1) declaratory relief, seeking a declaration as to when default interest began to accrue under the loan agreement; (2) breach of the loan agreement; (3) breach of covenant of good faith and fair dealing in the structuring of the loan and terms of the loan agreement; (4) unfair and deceptive trade practices; (5) conversion of amounts charged as default interest; (6) civil theft of amounts wrongly charged as default interest; (7) money had and received; (8) unjust enrichment; (9) constructive trust; (10) violation of Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"); (11) violation of Colorado Uniform Consumer Credit Code, C.R.S. § 5-1-101 *et seq.* ("UCCC"). As remedies, Plaintiffs seek declaratory relief, damages, penalties, and attorneys' fees and costs but do not specifically seek rescission of the loan.

<u>Standard of Review</u>

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

<u>Discussion</u>

In its Motion to Dismiss, Lender requests that Plaintiffs' claims be dismissed or, in the alternative, that the case be transferred to the Bankruptcy Court for adjudication.  In support of dismissal, Lender argues that the Bankruptcy Court's findings precludes any litigation of Lender's good faith or the validity/enforceability of the loan structure or documents under principles of *res judicata* or estoppel.  In addition, Lender argues that Plaintiffs' TILA and Colorado UCCC claims are barred because Debtors are not natural persons and therefore not protected by these statutes.  Plaintiffs oppose the Motion to Dismiss and object to transferring and reopening the bankruptcy proceedings.

1.    *Res Judicata*

"The doctrine of *res judicata*, or claim preclusion, will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment."  *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).  Three elements are required before the doctrine applies: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits.  *Id.*  A party may avoid claim preclusion if that party did not have a full and fair opportunity to litigate the issue.  *Id.*[2]

_____

[2]It appears that Lender's argument is also based to some extent on the doctrine of on issue preclusion, which has similar elements.  *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (application of issue preclusion requires four elements:  (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.).

A confirmed bankruptcy plan may constitute a final judgment for the purposes of *res judicata* because of the binding effect of a confirmed plan. *See* 11 U.S.C. § 1141(a) (in Chapter 11 proceedings, "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor . . . ."). The Tenth Circuit has recognized that a strong policy of finality justifies the application of *res judicata* to determinations made in bankruptcy proceedings. *See Andersen v. UNIPAC-NEBHELP*, 179 F.3d 1253, 1258 (10th Cir. 1999). Even if matters determined in the bankruptcy court conflict with the bankruptcy statutes, reviewing courts will enforce offending provisions in confirmed plans in the interest of providing finality, particularly where no appeal was brought and all payments under the plan were made. *Id*. at 1259. However, where a confirmed plan does not contain an express finding on an issue, *res judicata* may not apply. *In re Poland*, 382 F.3d 1185, 1188 (10th Cir. 2004).

Lender argues that *res judicata* requires dismissal of any claims based on Lender's alleged bad faith, specifically allegations that Lender "structured the loan documents in such a manner so as to avoid applicable state and federal loan lending requirements," "violated various federal and state lending laws with respect to the manner in which the loan was originally made to the Plaintiff," and that the auction agreement is "in direct violation of Colorado public policy and law." Lender further argues that the breach of contract claims should be dismissed in that they are based on challenges to the validity or enforceability of various loan terms, which were expressly approved by the Bankruptcy Court. Lender contends that the elements of *res judicata* are met because the confirmation

was a final judgment on the merits, the parties in this litigation were bound by the confirmation order and had the opportunity to litigate the claims (or issues), and the claims (or issues) are identical.

Plaintiffs argue in response that many of the facts underlying their claims are based on conduct occurring after the close of the bankruptcy proceedings and that the confirmation order did not specifically address "whether [Lender's] loan violates state and federal lending and disclosure laws, or whether the loan violates Colorado law relating to borrowers' foreclosure and redemption rights . . . [or] whether default interest can be triggered upon an alleged, unproven default of an agreement with a third party." Response to Motion to Dismiss at 6. In addition, Plaintiffs argue that the issues of good faith and enforceability were not necessarily put at issue by the confirmation process. Response to Motion to Dismiss at 7 (citing *Kaiser Aerospace and Elec. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.),* 244 F.3d 1289 (11th Cir. 2001)).

I agree with Plaintiffs that to the extent their claims are based on conduct occurring after the confirmation of the Plan, *res judicata* does not apply. This would include claims based on breach of contract or bad faith interpretation of the contractual provisions in Lender's declaration of default and charging/collection of default interest. On the other hand, I agree with Lender that Plaintiffs are barred from relitigating the enforceability of the loan terms or Lender's good faith in the development of the loan arrangements. Plaintiffs' claims in this regard are based entirely on loan terms and documents that were disclosed to Plaintiffs and approved by the Bankruptcy Court. Similarly, all of Plaintiffs' allegations of bad faith attributed to Lender arise from the "structuring" of the loan and other financing

7

arrangements, not from previously unknown or undisclosed conduct.  The order confirming the Plan makes clear that the entire reorganization and emergence from bankruptcy proceedings rests upon the implementation of the financing arrangements.  If these arrangements were later determined to be invalid, it would undermine the entire basis of the Plan, including the payments to creditors from the loan proceeds.

Unlike the cases cited by Plaintiffs, the validity and enforceability of the loan documents and financing arrangements, the negotiations, and the Lender's good faith were the subject of express findings of fact and conclusions of law in the confirmation order and were indeed "necessarily put at issue" in the proceedings.  In approving the Plan, the creditors and Bankruptcy Court relied on the findings and conclusions that Plaintiffs now seek to reverse.  Plaintiffs had the opportunity to challenge the terms of the loan prior to the confirmation but elected not to.  *See, e.g., In re Heritage Hotel Partnership I*, 160 B.R. 374 (9th Cir. BAP 1993) (confirmed plan of reorganization was *res judicata* on debtor's pre-petition lender liability causes of action; "It is now well-settled that a bankruptcy court's confirmation order . . . precludes the raising of issues which could or should have been raised during the pendency of the case, such as typical lender liability causes of action.").  Although this case concerns pre-confirmation arrangements, as opposed to pre-petition relationships, this does not alter the fact that Plaintiffs knew the facts underlying their current claims before the final confirmation order was entered.  To the extent they relate to claims in this litigation, Plaintiffs are bound by the findings and conclusions.  Plaintiffs' argument that their specific allegations are not barred by the Bankruptcy Court's general findings that the loan and supplemental agreements constitute

"legal, valid, binding and authorized obligations" is unavailing.   Any of Plaintiffs' claims arising out of pre-confirmation facts, such as the structuring or terms of the loan, the use of the auction agreement, or Lender's good faith  in the loan arrangements, are barred by *res judicata* or issue preclusion.

2.     TILA and Colorado UCCC Claims

Plaintiffs' TILA and UCCC claims are based on the assertion that Lender failed to comply with certain disclosure requirements and that the loans contained terms barred by these statutes.   As discussed, the validity of the loan terms and disclosures are *res judicata* as determined by the Bankruptcy Court.  In addition, Lender argues that Plaintiffs' TILA and UCCC claims should be dismissed because the protections under these statutes apply only to consumers who are natural persons, not organizations.   *See* 15 U.S.C. § 1602(h), 12 C.F.R. § 226.2(11); C.R.S. § 5-1-301 (10).  It is undisputed that the Properties were owned by Debtors, which are LLCs, the loan was extended to Debtors, and that Debtors repeatedly represented (and the Bankruptcy Court found) that the proceeds of the loan "will be used for a business or commercial purpose and not for a personal family or household purpose."

In response, Plaintiffs take the remarkable position that I should find the loan was made "in actuality" to Johnson.  Response to Motion to Dismiss at 13.  Plaintiffs thus ask me not only to disregard the Debtors' LLC status, which Plaintiffs used presumably in order to obtain the many benefits available when holding and financing property, but also the numerous affirmative representations made by Debtors to the Bankruptcy Court and the Debtors' creditors.  Plaintiffs cannot simply pick and choose to have independent entity

9

status recognized when it suits them and disregarded when it does not.   Similarly, numerous doctrines, including judicial estoppel, waiver, and *res judicata*, preclude Plaintiffs taking one position regarding the purpose of the loan in connection with the bankruptcy proceedings and the directly opposite position in this court, particularly when the Bankruptcy Court has made findings of fact in this regard.   Plaintiffs are thus bound by their representation that the financing was not for personal use by an individual consumer.

TILA and UCCC are unambiguous and clearly do not apply to a loan to an entity. Plaintiffs' case law does not persuade me otherwise.   Plaintiffs argue that the purpose of the loan is an issue of fact to be determined by the fact finder.   However, the case cited for this proposition, *Gallegos v. Stokes,* 593 F.2d 372 (10th Cir. 1979) concerns the application of the commercial use exemption under TILA to a loan made to an individual and is therefore inapposite.   *Adiel v. Chase Federal Savings & Loan Assoc.*, 586 F. Supp. 866 (D.C. Fla. 1984) is closer to these facts but involves loans to a homebuilder intended to be assumed by individual purchasers of the homes, which was contemplated from the outset.   There is no allegation that the parties intended for Johnson to purchase the Properties himself and/or to assume the loan issued by Lender.   *Hanley v. Barash*, 111 B.R. 709 (D.C. Ill. 1990) also has no application here, as it involved promissory notes issued to individual buyers, not to organizations.

Accordingly, Plaintiffs' TILA and UCCC claims should be dismissed.

3.   Transfer to the Bankruptcy Court

Lender asks that any remaining claims be transferred to the Bankruptcy Court and the bankruptcy estates reopened to consider these matters.   However, because all claims

that go to the validity of the financing arrangements are dismissed, I see little danger that this dispute would now affect the administration of the estates.  The enforceability of the loan terms and disclosures are not at issue; the only concern now is whether Lender breached those terms.   Similarly, Plaintiffs seek only damages, not rescission. Accordingly, there is little reason to be concerned that the payments to the creditors pursuant to the Plan would be put at risk.  In its current posture, this is a straightforward breach of contract case based on Lender's alleged conduct after the close of the bankruptcy proceedings, which is appropriately heard in this court.

Accordingly, it is ordered:

1.    The Motion to Dismiss (doc no 41) is granted in part and denied in part.  Claims 1-9 are dismissed to the extent that they rely on alleged pre-confirmation facts, such as the structuring or terms of the loan, the use of the auction agreement, or Lender's good faith  in the loan arrangements.  Claims 1 - 9 survive to the extent that they are based on alleged conduct occurring after the close of the bankruptcy proceedings.

2.    Claims 10 and 11 are dismissed.

3.    The request by Defendant to transfer the remaining claims to the Bankruptcy Court is denied.

DATED at Denver, Colorado, on July 3, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge

11